IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

STANLEY FELTON #283330,

              Plaintiff,

     v.

PETER ERICKSEN, CAPT. BRANT,
LIZ LEMERY and LT. LAMBRECHT,

              Defendants.

OPINION and ORDER

08-cv-227-slc[1]

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Plaintiff Stanley Felton is proceeding <u>in forma pauperis</u> on several claims brought under 42 U.S.C. § 1983. His first claim is that defendants Capt. Brant, Lt. Lambrecht, Peter Ericksen and Liz Lemery retaliated against him for exercising his First Amendment right to free speech through participation in a legal study group. His second, third and fourth claims are that defendants Brant and Ericksen violated his First Amendment right to free speech, that they retaliated against him for exercising that right by confiscating and disciplining him for participating in a group inmate complaint and that they denied him equal protection

_____

[1]This case was assigned to Magistrate Judge Crocker. Because the parties have not consented to his jurisdiction, I am assuming jurisdiction over the case for the purpose of deciding defendants' motion for summary judgment.

1

when he was treated differently because of his race.  The case is before the court on defendants' motion for summary judgment.  Dkt. #25.  I conclude that defendants' motion should be granted because plaintiff has failed to raise any genuine issues of material fact challenging defendants' entitlement to judgment as a matter of law on all four of plaintiff's claims.

As an initial matter, I will grant plaintiff's motion for a two-day extension of time, dkt. #39, and amended motion for a two-day extension of time, dkt. #41, because of a delay obtaining copies.  Accordingly, plaintiff's documents filed in opposition to defendants' motion for summary judgment will be considered timely filed.

Plaintiff also filed a motion to strike.  Dkt. #70.  He asks the court to strike several of defendants' exhibits  attached to defendants' supplemental findings of fact as well as defendants' reliance on <u>Bridges v. Gilbert</u>, 557 F.3d 541 (7th Cir. 2009), which they cited in their no-reply letter.  At the time they did so, only the Westlaw citation was available because of the recency of the opinion.  Nonetheless, the opinion is a published opinion of the Court of Appeals for the Seventh Circuit and must be considered.  Use of that case is not only acceptable but required.

Plaintiff's reason for striking several exhibits is merely that he disagrees with the information in the documents.  This is not a persuasive reason for striking documents.  However, I will not consider the documents for a different reason, that being defendants'

2

failure to follow the court's summary judgment procedures.  Defendants were instructed to "include ALL factual propositions [they] consider[ed] necessary for judgment in [their] favor" in their initial proposed findings of facts.  Procedure to be Followed on Motions for Summary Judgment, § I.B.3., dkt. #17 at 16.  However, defendants introduced new factual propositions in their supplemental findings of fact, dkt. #66, which was not filed until after plaintiff had responded to defendants' initial findings of fact.  The court's procedure gives the movant an opportunity to dispute any facts proposed by the nonmovant.  It does not allow the movant to submit new proposed facts.  Procedure, § III, dkt. #17 at 19.  It would prejudice plaintiff to allow defendants to introduce new facts in their reply because plaintiff would not have an opportunity to dispute those facts.  Accordingly, although I am denying plaintiff's motion to strike, I have not considered any of the findings of fact or new underlying documentation in defendants' supplemental findings of fact.

I find the following facts to be undisputed and material to deciding defendants' motion for summary judgment.

UNDISPUTED FACTS

A.  Parties

Plaintiff Stanley L. Felton is incarcerated at the Wisconsin Secure Program Facility. From July 27, 2001 until February 9, 2007, he was incarcerated at the Green Bay

3

Correctional Institution. At all times material to this action, defendant Peter Ericksen was Security Director at Green Bay Correctional Institution. Defendants Jason Lambrecht and Patrick Brant were correctional officers and defendant Elizabeth Lemery was Management Services Director.

### B. Plaintiff's Unauthorized Transfer of Property Conduct Reports

On April 29, 2005, defendant Brant received information that on April 18, 2005, $50.00 was placed in plaintiff's account. This money had been sent by an aunt of inmate Kevin McKillion. Brant talked to McKillion, who confirmed that his aunt had sent plaintiff the money but refused to tell Brant why he had instructed his aunt to do so. Brant spoke to plaintiff about the money and determined that he was lying about why the money was sent to him. Brant concluded that inmate McKillian had arranged to have his aunt send the money to plaintiff. Brant wrote plaintiff conduct report number 1336049 for violating Wis. Admin. Code §§ DOC 303.27, Lying, and DOC 303.40, Unauthorized Transfer of Property.

Wis. Admin. Code § DOC 303.27 provides as follows:

> Any inmate who makes a false written or oral statement which may affect the integrity, safety or security of the institution is guilty of an offense.

Wis. Admin Code § DOC 303.40 provides as follows:

> Any inmate who gives, receives, sells, buys, exchanges, barters, lends, borrows or takes any property from another inmate without authorization is guilty of

4

an offense.

The Department of Corrections forbids unauthorized transfers of property between inmates so as to prevent undesirable activities, such as theft, gambling, strong-arming and the selling of favors by inmates who have access to money, supplies, equipment, etc.

Defendant Ericksen reviewed the conduct report Brant wrote against plaintiff. At the disciplinary hearing, plaintiff was found guilty of the rule violations. Inmate McKillion received a conduct report alleging the unauthorized transfer of money to plaintiff.

On September 6, 2005, the business office informed Brant that plaintiff had received a money order from Tiffany Maddox, the sister of inmate Cornelius Maddox. Brant requested that a hold be placed on the money. After he did so, plaintiff wrote the business office, saying that he did not want the money.

Brant talked to inmate Maddox, who said he had instructed his sister to send plaintiff the money. Brant concluded that inmate Maddox had transferred his money to plaintiff. On September 27, 2005, Brant wrote plaintiff conduct report number 1687806 for violation of Wis. Admin. Code § DOC 303.40, unauthorized transfer of property. Other inmates also received conduct reports for receiving money from inmate Maddox that had been sent by his sister.

Plaintiff was found guilty of unauthorized transfer of property at an October 6, 2005 disciplinary hearing. Defendant Lambrecht was the hearing officer. It is disputed whether

5

defendant Brant was at this hearing. Defendant Lemery had no personal involvement in the issuance of the conduct or in the disciplinary hearing.

### C. The Group Petition

In late January 2007, prison officials were informed that a petition was being circulated about an inmate work stoppage. Lieutenant Swiekatowski was assigned to investigate the petition. On February 6, 2007, Swiekatowski was given a fifteen-page document that had been confiscated from inmate Tony Gray's cell after another correctional officer had witnessed inmate Dennis Jones placing the document in Gray's cell.

The document, entitled Prisoner Legal Memorandum, began with a quote from Mumia Abu Jamal, "When a cause comes along and you know it in your bones that it is just, yet refuse to defend it - at that moment you begin to die! And I have never seen so many corpses walking around talking about 'Justice'." Dkt. #31-6 at 3. The first page of this memorandum gave information about distribution and submission of the document. The second page was typed on an offender complaint form and entitled "Group Complaint." The document included an explanation of the importance of inmate work within the corrections system and a plan to go on strike and stop participating in all work, school or program assignments beginning May 1, 2007 if 30 different requests for relief were not provided. Swiekatowski believed that the document was an inmate petition that had been drafted and

circulated in an attempt to form an inmate union, which is prohibited under Wis. Admin. Code § DOC 309.365(5)(c)(1).

During his investigation, Swiekatowski interviewed inmates identified as confidential informants about the petition. These witnesses told Swiekatowski that several of the inmates circulating the petition were talking about assaulting correctional officers. One informant stated that he had received a letter stating that a major movement is taking place against the administration. Another informant stated that the leaders were meeting in the library. Other information indicated that inmates were threatening Lt. Campbell and Lt. Lesatz with bodily harm. Swiekatowski's investigation led him to believe that plaintiff was part of the group circulating the petition and that he had met with inmate gang leaders in the institution law library to discuss the petition. Swiekatowski concluded that plaintiff had played an active role in the solicitation of signatures on the petition.

On February 9, 2007, plaintiff was transferred from the Green Bay Correctional Institution to the Wisconsin Secure Program Facility by order of the warden. On that same date, the warden effected a lockdown of the Green Bay Correctional Institution on the ground of a significant risk to the security and safety of the public staff and inmates.

On May 22, 2007, Swiekatowski issued conduct report number 1886144 to plaintiff for distributing an unauthorized petition in violation of § DOC 303.20, conspiring to organize an inmate riot in violation of § DOC 303.18C and conspiring to physically assault

7

specific staff and inmates in violation of §DOC 303.12C.

Wis. Admin Code § DOC 303.12, Battery, provides as follows:

(1) Any inmate who causes bodily injury or harm to another is guilty of an offense.

(2) Any inmate who spits or throws or uses body fluids or waste or any substance on another is guilty of an offense.

(3) Any inmate who causes the death of another is guilty of an offense.

Wis. Admin Code § DOC 303.18, Inciting a riot, provides as follows:

Any inmate who encourages, directs, commands, coerces or signals one or more other persons to participate in a riot is guilty of an offense.  "Riot" means a disturbance to institutional order caused by a group of 2 or more inmates which creates a risk of injury to persons or property.

Wis. Admin Code § DOC 303.20(2), Group resistance and petitions, provides as follows:

(2) Any inmate who joins in or solicits another to join in any group petition or statement is guilty of an offense except that the following activities are not prohibited:

(a) Group complaints in the inmate complaint review system.
(b) Group petitions to courts.
(c) Authorized activity by groups approved by the warden under s. DOC 309.365 or legitimate activities required to submit a request under s. DOC 309.365 (3) or (4).
(d) Group petitions to government bodies, legislators, courts or newspapers.

Wis. Admin Code § DOC 303.05, Conspiracy, provides as follows:

(1) If 2 or more inmates or others plan or agree to do acts which are prohibited under this chapter, all inmates may be guilty of an offense.
(2) An inmate who plans or agrees with individuals to do acts which are forbidden

8

under this chapter is guilty of an offense.
(3) The penalty for conspiracy may be the same as the penalty for the most serious of the planned offenses.
(4) The number used for conspiracies in recordkeeping and conduct reports shall be the offense's number plus the suffix C.

Group complaints are different from group petitions. Group offender complaints may be submitted to the Inmate Complaint Review System by inmates who share a common complaint. The prison system views group petitions as posing a security risk because they solicit participation in unsanctioned and unregulated inmate groups, encourage disregard for prison rules and authority and could lead to the coercion of inmates to participate. Defendants Ericksen and Brant did not consider the Prisoner Legal Memorandum to be a group complaint because it was circulated in secret and contained threats of an institution-wide work stoppage or inmate strike. After reviewing the memorandum and Swiekatowski's conduct report, defendant Ericksen believed that the memorandum was a guise for unsanctioned and dangerous inmate group plans and activities.

Plaintiff received a disciplinary hearing on conduct report 1886144 on June 27, 2007. Defendant Brant was on the disciplinary committee that heard the evidence at the hearing. Plaintiff objected to the statements of the confidential informants. Nonetheless, the committee found the informants' statements credible and found plaintiff guilty of violating §§ DOC 303.12C and 303.18C but not guilty of violating § DOC 303.20. The committee stated the reasons for its decision as follows:

9

It is the decision of this Committee that based on the [confidential informant] statements, the physical evidence and Felton's own statements that it is more likely than not that Felton conspired with other inmates to encourage, direct and command a disturbance to the institutional order including the taking of hostages and as such is guilty of violating 303.18C.  It is also our decision that as part of that disturbance, Felton conspired with other inmates to assault staff causing bodily harm or injury contrary to the provisions of 303.12C(1).

Seven inmates received conduct reports for circulating the petition.  Six were African-American and one was Caucasian.  Five of the African-American inmates were transferred to the Wisconsin Secure Program Facility.  One African-American inmate and the Caucasian inmate were not transferred because they did not satisfy the clinical standards necessary for transfer to the Wisconsin Secure Program Facility.

OPINION

Under Fed. R. Civ. P. 56, summary judgment is appropriate "when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." Goldstein v. Fidelity & Guaranty Insurance Underwriters, Inc., 86 F.3d 749, 750 (7th Cir. 1996) (citing Fed. R. Civ. P. 56); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).  The district judge's function in a summary judgment motion "is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249.  Additionally, "it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs."

10

Id. at 248.  Furthermore, all reasonable inferences from undisputed facts should be drawn in favor of the nonmoving party.  Baron v. City of Highland Park, 195 F.3d 333, 338 (7th Cir. 1999).  However, the nonmoving party cannot simply rest upon the pleadings once the moving party has made a properly supported motion for summary judgment; instead the nonmoving party must submit evidence to "set out *specific* facts showing a genuine issue for trial."  Fed. R. Civ. P. 56(e) (emphasis added).

## A. Retaliation for Participation in Legal Study Group

Plaintiff contends that defendants Brant, Lambrecht, Ericksen and Lemery retaliated against him for participation in a legal study group by issuing him two conduct reports.  To prevail on his retaliation claim plaintiff must prove that his constitutionally protected conduct was a substantial or motivating factor in a defendant's action.  Hasan v. U.S. Department of Labor, 400 F. 3d 1001, 1005-06 (7th Cir. 2005).  If plaintiff proves that an improper purpose motivated defendants, the burden shifts to defendants to prove that the same actions would have occurred in the absence of the protected conduct.  Spiegla v. Hull, 371 F.3d 928, 942 (7th Cir. 2004).

Although plaintiff has the burden to prove that he was engaged in constitutionally protected conduct, he provided no evidence from which a reasonable jury could determine that he was engaged in any such conduct.  By moving for summary judgment, defendants

11

challenged plaintiff to produce evidence from which a reasonable jury could find in his favor on his retaliation claim.  Johnson v. Kingston, 292 F. Supp. 2d 1146, 1152-53 (W.D. Wis. 2003).  However, plaintiff did not submit any of his own findings of fact, even though this court's Procedure to be Followed on Motions for Summary Judgment, II.B.1., dkt. #17, at 17, explains that "[a] responding party should file additional proposed findings of fact if it needs them to defeat the motion for summary judgment."

Although defendants propose facts that they did not retaliate against plaintiff for any involvement in inmate-to-inmate legal services and it is clear from the parties' briefs that plaintiff believes that he was retaliated against for participating in a "legal study group," plaintiff produced no evidence that he actually participated in any group.  Furthermore, even assuming that plaintiff was participating in a group, there is no evidence that it was a group to provide legal help to inmates.  In fact, although plaintiff states the correct legal standard to use in determining whether he will prevail on his retaliation claim, he fails to discuss whether he was engaging in constitutionally protected conduct.  With no evidence about the actual nature of the group, it would be impossible for a jury to determine whether plaintiff was engaged in constitutionally protected conduct, such as protected speech or association under the First Amendment.

Even if plaintiff had shown he had participated in a legal study group sometime before he was disciplined, he has produced no evidence from which a jury could infer that his

12

participation in the legal group motivated defendant Brant to issue two conduct reports against him for the unauthorized transfer of property. He has no evidence that defendant Brant was aware that he was involved in a legal study group. Without evidence of such awareness, no reasonable jury could determine that plaintiff's involvement in any such group motivated defendant Brant to issue the conduct reports. The only evidence that plaintiff has submitted are affidavits of inmates that have received money from non-relatives, some of whom were relatives of other inmates. (I note again that this evidence was submitted in violation of the court's summary judgment procedures because it was not submitted in plaintiff's own proposed findings of fact. I mention the evidence to demonstrate that even if that evidence were relied upon, it would not defeat defendants' motion for summary judgment.) However, this evidence is not material because plaintiff was given conduct reports for receiving another inmate's property, that is, money through a relative, not for merely receiving money from a non-relative. There is no evidence that other inmates transferred money to those other inmates through relatives. In plaintiff's circumstances, two inmates admitted to asking their relatives to send plaintiff money on their behalf. Thus, evidence that other inmates received money from non-relatives is not evidence that defendant Brant was motivated to issue plaintiff conduct reports in retaliation for his participation in any legal group.

Additionally, there is no evidence that defendants Lambrecht, Ericksen and Lemery

13

were motivated by, or even aware of, plaintiff's participation in a legal study group. Nonetheless, plaintiff argues that there are two factual disputes regarding his second conduct report and disciplinary hearing that raise an issue about defendants Lambrecht's and Lemery's motivation. He states that after a hold was placed on the money he received from Tina Maddox, he advised the business office that he did not want the money. Defendant Lemery states she did not see this correspondence, but plaintiff contends that she is lying because she is conspiring with defendants Brant and Lambrecht to retaliate against him. Regardless whether defendant Lemery saw the correspondence, her knowledge of the correspondence does not change the fact that she had no involvement in the issuance of the conduct report or in providing the hearing. Thus, defendant Lemery was not involved in the alleged retaliation. E.g., Gentry v. Duckworth, 65 F.3d 555, 561 (7th Cir. 1995) (liability under 42 U.S.C. § 1983 requires defendant's personal involvement in constitutional violation).

Furthermore, plaintiff states that defendant Brant was at the October 6, 2005 disciplinary hearing but Brant denies being at the hearing. Even assuming that he was there, his presence would not establish that defendant Lambrecht's decision at the hearing was motivated by plaintiff's participation in the legal study group. Resolving these factual disputes in favor of plaintiff does not change the conclusion that defendants Lemery and Lambrecht are entitled to summary judgment because plaintiff's proposed facts do not

14

provide proof of a retaliatory motive on the part of either defendant Lemery or defendant Lambrecht.

Moreover, defendants have produced undisputed evidence that absent plaintiff's participation in any legal study group, he would have been disciplined.  Plaintiff received conduct reports for unauthorized transfer of property on two occasions because he received property of another inmate that was sent to him by a relative of that inmate.  Even accepting plaintiff's assertion that he rejected the money from Tina Maddox after the hold was placed on it, defendant Brant's investigation revealed that inmate Maddox intentionally used Tina to send plaintiff money on his behalf.  Plaintiff was found guilty of these offenses at two separate hearings that occurred months apart.  Furthermore, prison authorities issued conduct reports for unauthorized transfer of property to inmates McKillion and Maddox, both of whom had relatives send money to plaintiff, as well as to several other inmates. There is no evidence in the proposed findings of fact that any of those inmates participated in any legal study group.  The undisputed evidence supports the conclusion that plaintiff would have received conduct reports regardless whether he was participating in any group. No reasonably jury could find otherwise.  Therefore, defendants' motion for summary judgment will be granted on plaintiff's first retaliation claim.


B.  First Amendment Right of Free Speech

15

Plaintiff contends that the circulation of a group complaint is a protected activity under the First Amendment.  In his complaint, plaintiff alleged that he joined others in compiling a group complaint about the conditions of confinement at the Green Bay Correctional Institution.  However, the undisputed facts reveal that the group complaint was not a complaint to be filed through the inmate grievance procedure but rather a group petition that contained inflammatory language and called for the formation of a type of inmate union that could conduct work stoppages.  Defendants Brant and Ericksen confiscated the document in accordance with a legitimate penological interest.

As an initial matter I note that the central dispute between plaintiff and defendants is whether the Prisoner Legal Memorandum was a group complaint, which is permitted, or a group petition, which is prohibited.  I understand plaintiff to contend not that the confiscation of a petition is unrelated to a legitimate penological interest but that the confiscated petition was actually a group complaint.  Plaintiff is mistaken.  Defendant Ericksen's and Brant's determination that the document was a petition and not a complaint is one of the "difficult judgments concerning institutional operations" for which prison administrators receive deference, so long as the judgment was reasonable.  Jones v. North Carolina Prisoners' Labor Union, Inc., 433 U.S. 119, 128 (1977).

A review of the alleged memorandum, along with the information uncovered while investigating its circulation among inmates, establishes that defendants' determination was

16

supported by "some evidence," that is, it was not arbitrary or without support in the hearing record.  E.g., McPherson v. McBride, 188 F.3d 784, 786 (7th Cir. 1999) (decision of disciplinary board need only be supported by "some evidence" to be upheld).  Other evidence that supports defendants' determination about the memorandum is that group complaints can contain only one issue, Wis. Admin. Code § 310.09(1)(e), and the memorandum contained 30 issues.  Also, the memorandum discussed an inmate strike intended to force prison officials into inmate work and it was not passed openly among inmates.  Thus, defendant Brant's and Ericksen's determination that the document was a petition was a reasonable one to which deference is appropriate.

Although the First Amendment protects complaints about prison conditions filed through the inmate complaint system, Wainscot v. Henry, 315 F.3d 844, 852 (7th Cir. 2003) (stating that retaliation for criticizing government "runs counter to the most basic understandings of the First Amendment"), there is no evidence that defendants Brant or Ericksen disciplined plaintiff simply because he complained or because he filed an inmate complaint.  Rather, plaintiff was disciplined because the document entitled Prisoner Legal Memorandum violated prison regulations regarding the circulation of group petitions.

After I granted plaintiff leave to proceed on this claim, the Court of Appeals for the Seventh Circuit held in Bridges v. Gilbert, 557 F.3d 541 (7th Cir. 2009), that a prisoner's speech can be protected even if it does not involve a matter of public concern.  The appellate

17

court held that the lower courts should apply the test in <u>Turner v. Safely</u>, 482 U.S. 78, 89 (1987), to determine whether a prisoner's free speech rights have been violated. That is the test I will use.

In <u>Turner</u>, 482 U.S. at 89, the Supreme Court held that a prison regulation that impinges on a prisoner's constitutional rights must be reasonably related to legitimate penological interests. The Court set forth four factors to be used in evaluating whether this legitimate penological interests test is satisfied: (1) whether a valid, rational connection exists between the regulation and a legitimate governmental interest; (2) whether the prisoner has available alternative means of exercising the right in question; (3) whether accommodation of the asserted right will have negative effects on guards, inmates or prison resources; and (4) whether there are obvious, easy alternatives at a minimal cost. <u>Id.</u> at 89-91.

Defendants argue that there is a valid rational connection between the regulation barring group petitions and the legitimate penological interest of providing a safe, secure and stable institutional environment. I agree. At the outset, I note that "[b]ecause the realities of running a penal institution are complex and difficult, [ ] wide-ranging deference [is] to be accorded to the decisions of prison administrators." <u>Jones</u>, 433 U.S. at 126. Thus, unless plaintiff could prove that defendants' reasons for barring group petitions were unreasonable, which he has not done, I must give their reasons deference. <u>Id.</u> at 127-28.

18

Turning to the <u>Turner</u> test, courts have noted that banning petitions in an effort to maintain control over group activity by prisoners is a reasonable response to legitimate penological concerns. <u>E.g.</u>, <u>Pearson v. Welborn</u>, 471 F.3d 732, 741 (7th Cir. 2006) ("certain types of 'petitioning' would be obviously inconsistent with imprisonment (marches or *group protests*, for example).") (emphasis added); <u>see also</u> <u>Jones</u> 433 U.S. 127-29 ("It is clearly not irrational to conclude that . . . concerted group activity . . . would pose additional and unwarranted problems and frictions in the operation of the State's penal institutions. The ban on inmate . . . group meetings, therefore, was rationally related to the reasonable, indeed to the central, objectives of prison administration."). Unlike group complaints filed in the inmate complaint system, group petitions pose a security risk because they solicit participation in unsanctioned and unregulated inmate groups. The circulation of petitions can create circumstances in which some inmates coerce other inmates to participate against their will. Further, this particular petition encouraged violation of prison rules, including striking, and the investigation of the petition revealed that some of the inmates circulating the petition were talking about assaulting correctional officers. I conclude that defendants' decision to confiscate the petition had a valid, rational connection to the legitimate penological objective of maintaining order in the institution.

The second <u>Turner</u> factor is also satisfied. Plaintiff had an alternative means of exercising his First Amendment right to complain about the conditions of his confinement.

He could have filed an individual or group complaint that complied with the regulations governing inmate complaints. Wis. Admin Code. §§ DOC 310.09 and 310.10. If those efforts failed, he could have filed a class action lawsuit about the conditions of confinement.

I also conclude from the undisputed facts that a reasonable jury could not find in favor of plaintiff on the third and fourth Turner factors. Not confiscating the group petition would have an impact on guards, other inmates and institution resources because of the threat to institution security and the possibility that some inmates could be forced to engage in activities that violate institutional rules. The threat to institutional security is further supported by the fact that the warden had to effectuate a lockdown of the institution three days after the petition was discovered because of what he perceived to be a significant risk to the security and safety of the public staff and inmates. Moreover, there are no obvious easy alternatives to prohibiting the circulation of group petitions. Permitting some petitions while trying to prohibit others would have a negative effect on the ability of institution staff to maintain prison security. Inmates would attempt to disguise improper petitions in an effort to get around any such alternative. Thus, defendants' decision meets the Turner test. Confiscation of the Prisoner Legal Memorandum was reasonably related to a legitimate penological interest. Accordingly, plaintiff's First Amendment right to free speech was not violated. Defendants are entitled to summary judgment on plaintiff's free speech claim.

### C.  Retaliation for Circulating Group Petition

As discussed above, to prevail on a retaliation claim, plaintiff must prove that defendants retaliated against him for engaging in a constitutionally protected activity. Because I have found that plaintiff's circulation of the group petition was not protected activity under the First Amendment, he cannot prevail on a claim that he was the subject of retaliation for circulating the petition.  Defendants' motion for summary judgment on plaintiff's second retaliation claim will be granted.

### D.  Equal Protection Claim

Plaintiff contends that his equal protection rights were violated when he was treated differently because of his African-American race when he received conduct report number 1886144 and was transferred to the Wisconsin Secure Program facility.  To prevail on his equal protection claim, plaintiff must prove that he suffered a discriminatory effect, that is, he must show that he was treated differently from similarly situated individuals in the unprotected class.  Chavez v. Illinois State Police, 251 F.3d 612, 636 (7th Cir. 2001). Plaintiff must also show that a defendant acted with a discriminatory purpose.  Village of Arlington Heights v. Metropolitan Housing Development Corp., 429 U.S. 252, 265 (1977).

It is undisputed that seven inmates received conduct reports for the group petition. Six were African-American and one was Caucasian.  One African-American inmate and the

21

Caucasian inmate were not transferred to the Wisconsin Secure Program facility because they were not clinically cleared for the transfer.

Plaintiff fails to provide any evidence that he was treated differently from any similarly situated individual in the unprotected class, that is, any similarly situated non-African-American.  Plaintiff does not dispute that in order to be transferred to the Wisconsin Secure Program Facility inmates must satisfy specific clinical standards and that the Caucasian inmate was not clinically cleared for transfer to that facility.  Thus, the Caucasian inmate was not similarly situated to plaintiff because plaintiff was clinically cleared for transfer.  Furthermore, another member of plaintiff's protected class, that is, another African-American inmate who received a conduct report for his involvement with the group petition, was not transferred to the Wisconsin Secure Program Facility because he was not clinically cleared for transfer.  This fact further supports the conclusion that no reasonable jury could find that race had anything to do with which inmates were transferred to the facility.  Additionally, although plaintiff argues that some inmates that were involved in the conspiracy did not receive conduct reports, he has not provided evidence that these inmates were similarly situated to him.

Plaintiff has not presented any evidence that he was treated differently from a similarly situated inmate in the unprotected class.  Therefore, defendants' motion for summary judgment on plaintiff's equal protection claim will be granted.

22

Because I have found that plaintiff's constitutional rights were not violated, I need not address defendants' motion for summary judgment on the ground of qualified immunity.


ORDER

IT IS ORDERED that

1.  Plaintiff Stanley Felton's motion, dkt. #39, and amended motion, dkt. #41, for a two-day extension of time are GRANTED;

2.  Plaintiff's motion to strike, dkt. #70, is DENIED;

3.  The motion for summary judgment, dkt. #25, filed by defendants Peter Ericksen, Capt. Brant, Liz Lemery and Sgt. Lambrecht-Stevens is GRANTED;

4.  The clerk of court is directed to enter judgment DISMISSING this case in favor of defendants.

Entered this 28th day of April, 2009.

BY THE COURT:

/s/

_____
BARBARA B. CRABB
District Judge

23